# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JAEHO JUNG,                         ) | |
|              ) | |
|       Plaintiff,              ) | CASE NO. 18-CV-4259 |
|              ) | |
|     v.                       ) | |
|              ) | |
| CHICAGO POLICE SERGEANT XAVIER  ) | |
| ELIZANDO; CHICAGO POLICE OFFICER  ) | |
| PRISCILLA HERNANDEZ, STAR NO. 7387;  ) | |
| CHICAGO POLICE OFFICER SERGEANT MARK  ) | |
| FLECHSIG; CHICAGO POLICE OFFICER ASHAI  ) | |
| HAYDEN; CHICAGO POLICE SERGEANT SHAWN  ) | |
| PICKETT; CHICAGO POLICE LIEUTENANT DARREN  ) | |
| DOSS, individually and as employees/Agents of the CITY  ) | |
| OF CHICAGO, a municipal corporation; and THE CITY  ) | |
| OF CHICAGO, a municipal corporation,  ) | |
|              ) | |
|       Defendants.            ) | |

## <u>COMPLAINT</u>

NOW COMES PLAINTIFF JAEHO JUNG, by and through his attorneys ROBERTSON DURIC, and complains of Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez, Star No, 7387; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Asahi Hayden; Chicago Police Sergeant Shawn Pickett; Chicago Police Captain Darren Doss, all individually and as employees and/or agents of the City Of Chicago; and the City of Chicago as follows:

### Introduction

1.     This is an action for civil damages brought pursuant to 42 U.S.C. § 1983, and includes certain Illinois state law claims. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), and the Constitution of the United States. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §

1367.

2.      Venue in this district is proper pursuant to 28 U.S.C § 1391(b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3.      Plaintiff Jaeho Jung is a resident of this District.

4.      Plaintiff Jung is of Korean-American descent.

5.      At all times relevant to this Complaint, Plaintiff Jung was employed as a police officer by the City of Chicago Police Department.

6.      Plaintiff has been working with the City of Chicago as a police officer since August of 2006.

7.      Plaintiff is a decorated police officer for the City of Chicago and has been so since he started with the Department.

8.      Plaintiff has received approximately 150 decorations and professional awards from the Chicago Police Department and various professional organizations. Over 120 of these awards have come from the Chicago Police Department itself.

9.      Defendants Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez, Star 7387; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Asahi Hayden; Chicago Police Sergeant Shawn Pickett; and Chicago Police Lieutenant Darren Doss (now Captain) were at all times material hereto duly appointed Chicago Police Officers employed by the Defendant City of Chicago and acting in the capacity of a sworn law enforcement officials.

10.     Defendant City of Chicago is a municipal corporation that maintained as a division of the municipal corporation a police department that is commonly referred to as

the Chicago Police Department.

11.     Defendant City of Chicago employs one or more employees and, as such, is subject to the Illinois Whistleblower Act.

12.     From May 2014 to January 2015, Defendant Chicago Police Sergeant Xavier Elizondo was the head of the Third District 361 Tactical Team.

13.     During that period of time, Defendant Elizando was the direct supervisor of Plaintiff Officer Jung, who was assigned as a tactical officer to that team.

14.     In February 2015, Plaintiff was transferred to another of the Third District tactical teams – Team 362.

15.     From February 2015 to May 2015, Defendant Chicago Police Sergeant Shawn Pickett was the head of the Third District 362 Tactical Team.

16.     During this period of time, Defendant Pickett was the direct supervisor of Plaintiff, who was assigned as a tactical officer to that team.

17.     Defendant Doss supervised and was above Defendant Pickett in the Third District chain of command during this period of time.

18.     Defendant Doss and his subordinates were responsible for supervising Defendant Pickett during this period of time.

19.     In May 2015, Defendant Chicago Police Sergeant Mark Fleschsig was Plaintiff's direct supervisor on the Third District 362 Tactical Team. Defendant Sergeant Flechsig continued to supervise Plaintiff in this position until October 2015.

20.     At all relevant times to this Complaint, Defendant Lieutenant Doss supervised and was above Defendant Sergeant Pickett in the Third District chain of command during this period of time.

21.     Defendant Doss and his subordinates were responsible for supervising Defendant Pickett during this period of time.

**Plaintiff Sees The Code of Silence In Action**

22.     While working in the Chicago Police Department, Plaintiff became aware of a code of silence amongst many of the officers, supervisors, and employees of the Chicago Police Department.

23.     Plaintiff became aware that he and other officers were actively pressured and discouraged from reporting misconduct and were in fact encouraged to turn a blind eye to a variety of misconduct by members of the Chicago Police Department, including officers, tactical officers, supervisors and other employees of the Chicago Police Department.

24.     Frequently, the officer actively pressuring or discouraging the reporting of police misconduct was a supervisor or an officer with more experience.

25.     Plaintiff also became aware that many of the supervisors would order other officers to commit infractions, such as the filing of false reports or ignoring blatant rule violations, thereby compelling them to be an unwilling participant in some of the very violations that they were trying to report and remedy.

26.     Plaintiff also became aware that officers who reported infractions or violations were treated differently than other officers, including being a.) threatened and treated with hostility; b.) shunned or ostracized, c.) were not backed up or supported in the field in potentially dangerous situations; d.) were harassed through a variety of means such as false disciplinary write-ups and the denial of furlough or other job related accommodations or benefits; e.) blackballed and not afforded the opportunity to join

certain favored units or obtain favored assignments; and f.) were denied opportunities for promotion, including being passed over for merit promotions.

### Plaintiff Witnesses And Reports Police Misconduct

27.     On several occasions from May 2014 through October 2015, Plaintiff reported crimes and serious rules violations committed by members of the Chicago Police Department to the Chicago Police Department, at various levels, and to the Internal Affairs Division.

28.     Among the serious rule crimes and serious rule violations Plaintiff witnessed, and reported to his superiors and/or the Internal Affairs Division were: a.) the falsification of official sworn reports; b.) fabrication of contact cards and dispersal orders to artificially inflate the amount of police activity relating to gangs and narcotics; c.) refusal to report serious misconduct committed by fellow officers in an effort to conceal their incompetence and violation of rudimentary police procedure; d.) ghost pay-rolling wherein police officers were listed as working on-duty and paid on certain days but actually never worked on those days; and e.) certain officers routinely being allowed to miss substantial portions of their work shifts by arriving hours late to work or leave hours early with full pay and without loss of any accrued time accompanied by the falsification of police reports to make them appear as present and working on duty.

29.     Defendant Officers either committed the above crimes and/or serious rule violations, were knowingly complicit and an important part of such crimes and/or serious rule violations, had such crimes and serious rule violations reported to them and took efforts to conceal them, and/or deliberately ignored such crimes and violations so as to constitute a willful disregard for the truth of what was obviously occurring.

**Defendants Respond To Plaintiff's Violation Of The Code Of Silence**

30. Defendant Sergeants ordered Plaintiff to commit several of the aforementioned violations himself even though Plaintiff protested and specifically told his supervising Sergeant at the time that such actions were violations of the Chicago Police Department rules and could constitute criminal actions.

31. Further, when Plaintiff complied with Chicago Police Department Orders, Defendant Sergeants would refuse to permit Plaintiff to comply by not forwarding or approving lawful paperwork that Plaintiff had completed and properly submitted in the course of his duties.

32. By reporting the aforementioned crimes and serious rule violations and the role of Defendant Officers therein, Plaintiff violated the unwritten Code of Silence practiced and enforced by officers, supervisors and members of the Chicago Police Department.

**The Code Of Silence Has Thrived Unchecked In The Chicago Police Department**

33. The Code of Silence that is rampant within the Chicago Police Department has been admitted by Chicago Mayor Rahm Emanuel following the release of the Laquan McDonald shooting video.

34. The Department of Justice completed a report on the Chicago Police Department, concluding that there was a Code of Silence within the Department.

35. There have been other incidents where this Code of Silence has been dragged into the public light.

36. In *Spaulding v. City of Chicago*, 12 CV 8777, two Chicago Police Officers, Shannon Spaulding and Daniel Echeverria, brought suit alleging they had been

retaliated against by fellow Chicago Police officers for whistleblowing free speech. These officers also alleged that the Chicago Police Department retaliated against them for disclosing information regarding police misconduct to the FBI. This case was settled for two million dollars prior to trial.

37. In *Obrycka v. City of Chicago*, 07 CV 2372, a federal jury concluded that there was a Code of Silence that resulted in a police cover-up of officer misconduct that had led to Plaintiff's injuries at the hands of an off-duty police officer.

38. Most notably, the Code of Silence was prominent in the wake of the Laquan McDonald shooting, which involved the indictment of three Chicago Police Officers (Circuit Court of Cook County Case No. 17 CR 9700) who along with a number of other unindicted co-conspirator Chicago Police Officers went to the extraordinary lengths of filing false sworn police reports and misstating witness testimony in an attempt to conceal Jason Van Dyke's unjustified shooting of Laquan McDonald.

**Plaintiff Experiences Retaliation For Violating The Code Of Silence**

39. As a result of speaking out and reporting crimes and serious rules violations committed by members of the Chicago Police Department to the Chicago Police Department, Plaintiff has suffered retaliation at the hand of members of the Chicago Police Department, including the individual Defendants.

40. The specific retaliation that Plaintiff has suffered as a result of his reporting crimes and serious rules violations committed by members of the Chicago Police Department to the Chicago Police Department, include being subjected to a variety of racial slurs and epithets such as being called a "Chink;" threatened with arrest; hostility from supervisors; harassment such as reduced furlough and unwarranted

discipline for false infractions; removal from the tactical team; denial of transfer to certain favored assignments; and denial of promotion.

## Procedural History of Plaintiff's Lawsuit

41.     Plaintiff initially filed a complaint in the Circuit Court of Cook County involving this same core of operative facts on October 11, 2016, in 2016 L10054.

42.     On July 13, 2017, Plaintiff's Circuit Court of Cook County case was voluntarily dismissed without prejudice pursuant to section 2-1009 of the Illinois Code of Civil Procedure.

43.     This case is being refiled within one year pursuant to section 5/13-217 of the Illinois Code of Civil Procedure, which allows refiling of a cause of action within one year.

## The Law Catches Up With Defendant Officer Elizando

44.     Since the voluntary dismissal of the Circuit Court of Cook County Case, Defendant Chicago Police Sergeant Xavier Elizando has been suspended from active duty and is under federal indictment in a three count Indictment in Case No. 18CR286 for theft and lying to federal authorities in connection with the execution of John Doe search warrants during the period of April 2017 through March 2018.

45.     Specifically, during the course of conduct described by the Indictment, Elizondo has alleged to have: 1.) obtained materially false John Doe search warrants; 2.) caused confidential informants to provide false information to judges to obtain such warrants; 3.) falsified police reports to conceal criminal activities regarding the John Doe search warrants;  and 4.) lying to federal authorities.

## COUNT I
## FIRST AMENDMENT RETALIATION
### (Against All Defendants)

46.     Plaintiff realleges and incorporates by reference paragraphs 1-45 above as fully stated herein.

47.     The First Amendment of the United States Constitution guarantees Plaintiff the right to speak out on matters of public concern without fear of unjust retaliation.

48.     Plaintiff engaged in protected speech on matters of public concern by reporting criminal misconduct, corruption, and serious rules violations committed by members, officers, agents and/or employees of the Chicago Police Department.

49.     Plaintiff also engaged in protected speech on matters of public concern by filing an EEOC Complaint regarding the racial remarks/sexual harassment he received while working for the Chicago Police Department.

50.     As a result of Plaintiff's exercise of protected free speech, the Individual Defendant Officers retaliated against Plaintiff.

51.     Retaliation against Plaintiff was also devised, approved, and carried out by individuals with final policymaking authority with respect to the actions taken, as follows:

a. By authority delegated to him by the Chicago City Council, the Superintendent of Police is responsible for the general management and control of the police department, and has full and complete authority to administer the department. The Superintendent has the power and the duty to administer the affairs of the department as its chief administrative officer, including to make

appointments, promotions, transfers, and to take disciplinary action against department employees; to appoint, discharge, suspend or transfer employees; and issue instructions to department employees in the line of their duties.

b. Within the Department, the Superintendent has delegated certain policymaking authorities to his Chiefs, who have in turn delegated this authority to Individual Defendant Officers Doss, Elizando, Pickett and Flechsig.

52. The misconduct described in this Count was permitted by, encouraged by, contributed to by, and the result of Defendant City of Chicago's deliberate indifference to the policies and widespread practice of the Code of Silence and in that:

a. Municipal policymakers are aware of, condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers understand that they should cover for each other unconditionally and that failure to do so amounts to a betrayal.

b. Municipal policymakers are aware of, condone and facilitate by their inaction, the enforcement of the "code of silence" within the Department through the retaliation against officers who do report the misconduct of other officers.

c. The City Council's Committee on Police and Fire has recognized the existence of the code of silence within the Chicago Police Department but has failed to take the necessary steps to protect officers who break the Code of Silence and suffer retaliation as a result.

d. As a matter of both policy and practice, the City of Chicago directly encouraged, and was thereby the moving force behind the very type of misconduct at issue here by failing to adequately supervise, discipline, and control

its officers, such that its failure to do so manifests deliberate indifference.

e. As a matter of both policy and practice, the City of Chicago facilitated the very type of misconduct at issue here by allowing it to continue as a matter of practice within the Department, thereby leading Chicago police officers to believe that the Code of Silence will be enforced throughout the Department and, in that way, directly encouraging future abuses.

f. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department who have dared to speak out about the misconduct of others have experienced retaliation similar to that alleged by Plaintiffs.

53. As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees, and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

54. The misconduct described in this Count by the Individual Defendants was undertaken by Defendant Chicago Police Officers within the scope of their employment such that their employer, Defendant City of Chicago, is liable for their actions.

## COUNT II
### CONSPIRACY pursuant to 42 U.S.C. § 1983:
### (Against All Individual Defendants)

55.     Plaintiff repeats, re-alleges and fully incorporates paragraphs 1-45 as if fully pled herein.

56.     Individual Defendant Officers, acting in concert with other known and unknown conspirators, reached an agreement and/or understanding to deprive Plaintiff of his constitutional rights.

57.     Plaintiff was denied of his Constitutional rights in the manner described in the preceding paragraphs.

58.     In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors who were acting under the color of law.

59.     The misconduct alleged in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

60.     The Individual Defendant Officers are liable under 42 U.S.C. § 1983, because they agreed and conspired with each other to retaliate against Plaintiff in violation of the First Amendment.

61.     The Individual Defendant Officers took actions to further the conspiracy, including:

> a. Publicly berated and cursed at Plaintiff, including the use of racial slurs;
>
> b. Ordered Plaintiff into work on his days off during a previously approved furlough and at a time when he had been ordered home without justification;

c. Threatened to arrest Plaintiff;

d. Told Plaintiff to "go fuck yourself" and that superiors "want him gone;"

e. Threatened Plaintiff's career and any future promotions;

f. Threatened to search Plaintiff's home and arrest him in front of his daughter;

g. Denied Plaintiff multiple transfers;

h. Denied Plaintiff overtime benefits;

i. Forced Plaintiff to work the night shift without regard to his seniority;

j. Singled Plaintiff out by writing false disciplinary infractions against him that had no basis or justification;

k. Denied, withdrew, and reduced Plaintiff's furlough benefits without justification; and

l. Removed Plaintiff from the tactical team without justification and reassigned him to a perimeter position.

62.     In doing so, the Individual Defendant Officers were motivated solely by personal bias and were acting as part of a broader pattern of retaliation against Plaintiff and other employees that spoke out on matters of public concern.

63.     As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear

that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

64.     The misconduct described in this Count was undertaken by Defendant Chicago Police Officers within the scope of their employment such that their employer, Defendant City of Chicago, is liable for their actions.


## COUNT III
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER PROTECTION ACT
## 740 ILCS § 174/5
## (Against Defendant City of Chicago)

65.     Plaintiff repeats, re-alleges and fully incorporates paragraphs 1-45 as if fully pled herein.

66.     The City of Chicago employed Plaintiff at all times as defined in 740 ILCS § 174/5. Plaintiff was at all times complained of an employee as defined in 740 ILCS § 174/5.

67.     The City of Chicago and its members, officers, employees and/or agents were prohibited by the Illinois Whistleblower Protection Act 740 ILCS § 174/5 from retaliating against Plaintiff for reporting unlawful criminal actions and misconduct and serious rule violations on the part of members, officers, employees and/or agents of the Chicago Police Department.

68.     The City of Chicago and its members, officers, agents and employees, including Defendant Individual Officers, retaliated against Plaintiff because he reported unlawful criminal actions and misconduct and serious rule violations on the part of members, officers, employees and/or agents of the Chicago Police Department.

69.     As a direct and proximate result of one or more of the foregoing wrongful

14

acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

### COUNT IV
### WILLFUL AND WANTON CONDUCT
### (Against All Individual Defendants, individually and as agents)

70.     Plaintiff repeats, re-alleges and fully incorporates paragraphs 1-45 as fully stated herein.

71.     At all times relevant to this Complaint, Defendant Officers were acting as duly authorized agents of Defendant City of Chicago, who undertook to interfere with Plaintiff's safety and well-being.

72.     At all times relevant to this Complaint, Defendant City of Chicago and its police department, by and through its agents and employees, including the Individual Defendant Officers, owed a duty to Plaintiff to refrain from willful and wanton misconduct, during their performance of their duties as police officers.

73.     From May 2014, to the present, Defendant Officers breached that duty as they were willful and wanton in one or more of the following respects, each which was done with an utter indifference and conscious disregard for Plaintiff:

        a. Publicly berated and cursed at Plaintiff, including the use of racial slurs;

b. Ordered Plaintiff into work on his days off during a previously approved furlough and at a time when he had been ordered home without justification;

c. Threatened to arrest Plaintiff;

d. Told Plaintiff to "go fuck yourself" and that superiors "want him gone;"

e. Threatened Plaintiff's career and any future promotions;

f. Threatened to search Plaintiff's home and arrest him in front of his daughter;

g. Denied Plaintiff multiple transfers;

h. Denied Plaintiff overtime benefits;

i. Forced Plaintiff to work the night shift without regard to his seniority;

j. Singled Plaintiff out by writing false disciplinary infractions against him that had no basis or justification;

k. Denied, withdrew, and reduced Plaintiff's furlough benefits without justification; and

l. Removed Plaintiff from the tactical team without justification and reassigned him to a perimeter position.

74.     As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear

that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

## COUNT V
## ILLINOIS STATE LAW CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Individual Defendants)

75.     Plaintiff repeats, re-alleges and incorporates paragraphs 1-45 as fully stated herein.

76.     At all times relevant to this Complaint, Defendant Officers had a duty to refrain from acting with extreme and outrageous conduct toward their colleagues, subordinates, and co-workers, including Plaintiff.

77.     At all times relevant to this Complaint, Defendant Chicago Police Officers engaged in extreme and outrageous conduct in breach of that duty by cursing at, threatening, denying benefits to, issuing false disciplinary matters, bullying and harassing Plaintiff.

78.     In committing this extreme and outrageous conduct, Defendant Chicago Police Officers intended to inflict severe emotional distress on Plaintiff or recklessly or consciously disregarded the probability of causing emotional distress to Plaintiff.

79.     Defendant Chicago Police Officers acted willfully, with malice, and with knowledge of, or a conscious disregard of, the harm that would be inflicted upon Plaintiff by committing one or more of the following:

a. Publicly berated and cursed at Plaintiff, including the use of racial slurs;

b. Ordered Plaintiff into work on his days off during a previously

17

approved furlough and at a time when he had been ordered home without justification;

c. Threatened to arrest Plaintiff;

d. Told Plaintiff to "go fuck yourself" and that superiors "want him gone;"

e. Threatened Plaintiff's career and any future promotions;

f. Threatened to search Plaintiff's home and arrest him in front of his daughter;

g. Denied Plaintiff multiple transfers;

h. Denied Plaintiff overtime benefits;

i. Forced Plaintiff to work the night shift without regard to his seniority;

j. Singled Plaintiff out by writing false disciplinary infractions against him that had no basis or justification;

k. Denied, withdrew, and reduced Plaintiff's furlough benefits without justification;

l. Removed Plaintiff from the tactical team without justification and reassigned him to a perimeter position.

80.    As a direct and proximate result of Defendant Chicago Police Officer's extreme and outrageous conduct, Plaintiff suffered severe and extreme mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

81.    The misconduct described in this Count was undertaken by Defendant Chicago Police Officers within the scope of their employment such that their employer,

Defendant City of Chicago, is liable for their actions.

## COUNT VI
## ILLINOIS STATE LAW: CONSPIRACY
### (Against All Individual Defendants)

82.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 45 above as though fully set forth herein.

83.     Defendant Chicago Police Officers reached an agreement and conspired with one another to intimidate, harass, and retaliate against Plaintiff for Plaintiff's actions in whistleblowing and violating the Code of Silence.

84.     Defendant Chicago Police Officers took overt acts in furtherance of their conspiracy, including but limited to:

   a. Publicly berated and cursed at Plaintiff, including the use of racial slurs;

   b. Ordered Plaintiff into work on his days off during a previously approved furlough and at a time when he had been ordered home without justification;

   c. Threatened to arrest Plaintiff;

   d. Told Plaintiff to "go fuck yourself" and that superiors "want him gone:"

   e. Threatened Plaintiff's career and any future promotions;

   f. Threatened to search Plaintiff's home and arrest him in front of his daughter;

   g. Denied Plaintiff multiple transfers;

   h. Denied Plaintiff overtime benefits;

i. Forced Plaintiff to work the night shift without regard to his seniority;

j. Singled Plaintiff out by writing false disciplinary infractions against him that had no basis or justification;

k. Denied, withdrew, and reduced Plaintiff's furlough benefits without justification;

l. Removed Plaintiff from the tactical team without justification and reassigned him to a perimeter position.

85. Individual Defendant Chicago Police Officers acted with malice, willfulness, and reckless indifference to Plaintiff's rights.

86. The misconduct described in this Count was undertaken by Defendant Chicago Police Officers within the scope of their employment such that their employer, Defendant City of Chicago, is liable for their actions.

87. As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.

## COUNT VII
### State Law Claim: Indemnification
### (Against Defendant City of Chicago)

88.     Plaintiff repeats, re-alleges and incorporates paragraphs 1-45 as fully stated herein.

89.     Defendant City of Chicago is the employer of all of the individual Defendant Officers.

90.     In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

91.     Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; and Chicago Police Lieutenant Darren Doss were at all times material hereto employees of Defendant City of Chicago and acted within the scope of his employment in committing the misconduct described herein.

## COUNT VIII
### Illinois State Law:  Supplementary Claim for Respondeat Superior
### (Against Defendant City of Chicago)

92.     Plaintiff repeats, re-alleges and incorporates paragraphs 1-45 as fully stated herein.

93.     Defendant City of Chicago is the employer of all of the individual

Defendant Officers.

94.     Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; and Chicago Police Lieutenant Darren Doss were at all times material hereto employees of Defendant City of Chicago, were in the scope of their employment, and acted with willful and wanton disregard for Plaintiff and therefore, Defendant City of Chicago, as principlal, is liable for the actions of its agents under the doctrine of *respondeat superior*.

## COUNT IX
## Monell Claim
## (Against Defendant City of Chicago)

95.     Plaintiff re-alleges and incorporates paragraphs 1-45 above as fully stated herein.

96.     The Chicago Police Department (the "Department") is a subsidiary division of Defendant City of Chicago.

97.     The City maintains and exercises exclusive control over the Department, its policies and procedures, as well as the conduct of all of its employees, including Defendant Chicago Police Officers.

98.     The Independent Police Review Authority ("IPRA") is a subsidiary of Defendant City of Chicago during all times relevant to this Complaint. The City maintained and exercised exclusive control over IPRA, its policies and procedures, as well as the conduct of its employees.

99.     Defendant City, through its subsidiary the Chicago Police Department, has

established certain policies and procedures that were adopted and promulgated through the actions and inactions of senior and intermediate supervising officers of the Chicago Police Department, and were thereby ratified by Defendant City of Chicago.

100.    Defendant City of Chicago, through its subsidiary IPRA has established certain policies and procedures that were adopted and promulgated through the actions and inactions of senior and intermediate supervisory employees of IPRA, and thereby ratified by Defendant City of Chicago.

101.    At the time of this occurrence and prior thereto, there existed within the Chicago Police Department policies and procedures which result in the failure or refusal of the Chicago Police Department to properly and legitimately investigate police misconduct committed by sworn Chicago Police Officers against civilian citizens of Chicago.

102.    At the time of this occurrence and prior thereto, there existed within the Chicago Police Department policies and procedures which resulted in a Code of Silence that created and caused an environment in which Chicago Police Officers, like Plaintiff, and/or employees that reported any misconduct were retaliated against in a variety of ways, including being subjected to a variety of racial slurs and epithets; threatened; hostility from supervisors; harassment such as reduced furlough and unwarranted discipline for false infractions; removal from assignments such as the tactical team; denial of transfer to certain favored assignments; and denial of promotion.

103.    The Chicago Police Department failed or refused to properly and legitimately investigate police misconduct committed by sworn Chicago Police Officers against civilian citizens of Chicago and refused to remedy the Code of Silence.

104.     The failure or refusal of the Chicago Police Department to properly and legitimately investigate police misconduct by sworn Chicago Police Officers, to properly discipline its officers for such misconduct and to address the widespread Code of Silence is the proximate cause of frequent injuries to Plaintiff, as well as other citizens, and will be the cause of future injuries.

105.     The failure and refusal by Defendant City, through the Chicago Police Department and IPRA, to properly and legitimately investigate police misconduct by sworn Chicago Police Officers and to permit the operation of a Code of Silence that results in retaliation when police misconduct is reported signals a tolerance by Defendant City of police misconduct by Chicago Police Officers, and constitutes a deliberate indifference by Defendant City of Chicago to such conduct.

106.     As a direct and proximate result of one or more of the foregoing wrongful acts, Plaintiff was caused to suffer and continues to suffer lost benefits, lost opportunity, lost promotions, denial of job related perks, denial of furlough and time-off, threats, hostility from supervisors and fellow officers, endured unwarranted disciplinary reports for false infractions, has incurred costs and attorneys' fees and has suffered and continues to suffer from emotional distress, anxiety, humiliation, shame, embarrassment, and fear that has resulted in damage to his social and emotional well being, and interference with certain basic life functions including the ability to function at work and sleep.


### REQUEST FOR RELIEF

Plaintiff Jaeho Jung respectfully request that the Court:

a. Enter a judgment in Plaintiff's favor and against Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago

Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; Chicago Police Lieutenant Darren Doss; and THE CITY OF CHICAGO;

b. Award compensatory damages to Plaintiff and against Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; Chicago Police Lieutenant Darren Doss; and THE CITY OF CHICAGO;

c. Award attorney's fees and costs to Plaintiff and against Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; Chicago Police Lieutenant Darren Doss; and THE CITY OF CHICAGO;

d. Award punitive damages to Plaintiff and Defendant Chicago Police Sergeant Xavier Elizando; Chicago Police Officer Priscilla Hernandez; Chicago Police Sergeant Mark Flechsig; Chicago Police Officer Ashai Hayden; Chicago Police Sergeant Shawn Pickett; Chicago Police Lieutenant Darren Doss; and THE CITY OF CHICAGO;

e. Grant any other relief this Court deems just and appropriate, including equitable relief with respect to Plaintiff's *Monell* claim to include, among other things, the appointment of an independent monitor to oversee the creation and implementation of necessary reforms.

## JURY DEMAND

Plaintiff Jaeho Jung demands a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

 /s/ Robert Robertson

Robertson Duric
One North La Salle St.
Suite 300
Chicago, Illinois 60602
(312) 223-8600
Attorney No. 6207543